UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FRANCIS EMILIO SANCHEZ
NAVARRETE,

                  Petitioner,

  v.

KRISTI NOEM, et al.,

                  Respondents.

CIVIL ACTION NO. 3:26-CV-00320

(MEHALCHICK, J.)

## MEMORANDUM

Petitioner, Francis Emilio Sanchez Navarrete ("Navarrete"), an Ecuadorian citizen and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On February 9, 2026, Navarrete filed the instant petition, requesting that Respondents Kristi Noem, Pamela Bondi, Cammilla Wamsley, and Craig A. Lowe ("Lowe")[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or provide him with an

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 3, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Navarrete is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 4); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Kristi Noem, Pamela Bondi, and Cammilla Wamsley are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Navarrete on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

opportunity for bond redetermination. (Doc. 1, at 3). For the following reasons, Navarrete's petition (Doc. 1) is **GRANTED,** and Lowe is **ORDERED** to release Navarrete from custody.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following background and factual summary are derived from Navarrete's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 3). Navarrete is a citizen of Ecuador, who has lived in the United States since November 29, 2022. (Doc. 3-2, at 3). On December 29, 2022, Navarrete entered the United States without inspection approximately one mile northwest of the San Luiz, Arizona port of entry and was subsequently encountered by United States Customs and Border Protection ("CBP"). (Doc. 3-3, at 3). CBP paroled Navarrete into the United States under 8 U.S.C. § 1182(d)(5) due to time in custody constraints. (Doc. 3-3, at 3). A Notice to Appear was never processed in association with Navarrete's November 2022 encounter with CBP; however, Department of Homeland Security ("DHS") records indicate that upon parole into the United States, Navarrete was issued a G-56 DHS call-in letter and DHS tear sheet, with instructions that he must report to an ICE Field Office within 60-days. (Doc. 3-2, at 4; Doc. 3-3, at 3). Lowe asserts that Navarrete has not appeared at any ICE check in appointments, which are typically required upon parole into the United States. (Doc. 3, at 6). Since entering the United States, Navarrete obtained employment authorization and applied for asylum. (Doc. 1-5; Doc. 3-3, at 3). Navarrete's asylum application is still pending. (Doc. 3-3, at 3).

On June 18, 2023, The Pennsylvania State Police arrested Navarrete for driving under the influence. (Doc. 3-3, at 3). In relation to his arrest, ICE Enforcement and Removal Operations ("ERO") Pike Sub Office Officers encountered Navarrete in the Luzerne County jail. (Doc. 3-3, at 3). The officers identified Navarrete as a citizen of Ecuador, who entered

the United States illegally; however, DHS records do not indicate that the officers issued Navarrete a Notice to Appear or revoked his parole under § 1182(d)(5). (Doc. 3, at 6; Doc. 3-3, at 3). Navarrete pled guilty to driving under the influence, and the Luzerne County Court of Common Pleas sentenced him to six months of probation. (Doc. 3-3, at 4).

On February 1, 2026, Pike ERO Officers, Homeland Security Investigations Scranton, and Internal Revenue Service Scranton conducted surveillance at Navarrete's last known address in Hazleton, Pennsylvania. (Doc. 3-3, at 3). At 8:10 a.m., the officers visually identified Navarrete exiting the residence, entering his car, and driving southbound on state road 309. (Doc. 3-3, at 3). The officers stopped Navarrete's vehicle, identified him, and took him into custody. (Doc. 3-3, at 3). The officers charged Navarrete under § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as an alien present without admission or parole and an immigrant without an immigrant visa. (Doc. 3-3, at 3). The officers also issued Navarrete a notice to appear, which indicated that he is an alien present in the United States who has not been admitted or paroled. (Doc. 3-4; Doc. 1-6). Since February 1, 2026, Navarrete has been detained at the Pike County Jail in Lords Valley, Pennsylvania pending his removal proceedings. (Doc. 3-3, at 4).

Navarrete filed the instant petition for writ of habeas corpus on February 9, 2026. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), the government filed a response to Navarrete's petition on February 18, 2026 (Doc. 3). Navarrete filed a traverse on February 19, 2026. (Doc. 4). Accordingly, the petition is ripe for disposition.

II.   **LEGAL STANDARD**

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for

3

an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

III.    **JURISDICTION**

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v.*

4

*Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be

raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Navarrete and whether Navarrete is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV.    DISCUSSION

Navarrete contends that his mandatory detention under § 1225(b) is both a violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 19). Lowe counters that Navarrete is subject to mandatory detention because he falls squarely under § 1225(b)(1), which provides noncitizens only with the rights and protections set forth by Congress. (Doc. 3, at 20, 43). The Court will first address whether Navarrete was properly detained under § 1225(b). The Court will then address whether Navarrete's detention violates due process.[2]

   A. NAVARRETE WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B), WHEN HE SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

---

[2] The Court notes that Navarrete also claims relief under the Administrative Procedure Act ("APA") and the Suspension Clause of the Constitution. (Doc. 1, at 19-20). As the Court grants the Petition on the basis that Navarrete's detention is unlawful under the INA and violates his procedural due process rights, the Court declines to consider Navarrete's APA and Suspension Clause arguments at this time. *See Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *5 (E.D. Pa. Nov. 18, 2025); *see Kashranov*, 2025 WL 3188399, at *8; *see also Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

Navarrete was improperly detained under 8 U.S.C. § 1225(b), when he should have been detained under 8 U.S.C. § 1226(a). Navarrete avers that noncitizens who have lived in the United States for years before ICE apprehended them are properly detained under § 1226(a), not § 1225(b). (Doc. 1, at 19). Lowe counters that Navarrete is properly detained under § 1225(b)(1) because Navarrete was apprehended within a mile of a port of entry and was paroled into the United States under § 1182(d)(5). (Doc. 3, at 20). Lowe reasons that once Navarrete's parole under § 1182(d)(5) was revoked, Navarrete was for all intents and purposes still in line at the border and subject to mandatory detention under § 1225(b)(1). (Doc. 3, at 4, 20-23). In the alternative, Lowe contends that Navarrete meets the definition of an applicant for admission who is present in the United States without admission and thus is properly detained under § 1225(b)(2)(A). (Doc. 3, at 24-25).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion

and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, DHS may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Humanitarian parole is not considered admission into the United States, and humanitarian parole automatically terminates without written notice upon the noncitizen's departure from the United States or the expiration of time for which the parole was authorized. 8 U.S.C. § 1182(d)(5)(A). If the purpose of the parole has been served, then the noncitizen will be returned to the custody from which he or she was paroled. 8 U.S.C. § 1182(d)(5). However, the government must first provide written notice of and an opportunity for the noncitizen to respond to its determination that the purpose of parole was accomplished or its determination that "neither humanitarian reasons nor public benefit warrants the continued presence of an alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); 8 U.S.C. § 1182(d)(5). 8 U.S.C. §§ 1225(b)(1)(A)(i)-(ii). Lowe avers that Navarrete is still subject to mandatory detention and expedited removal under § 1225(b)(1) because Navarrete was detained within one mile of a

port of entry and paroled into the United States before an immigration officer conducted a credible fear interview. (Doc. 3, at 20-23).The parties dispute whether a noncitizen, like Navarrete, who DHS released on humanitarian parole and then re-detained is subject to detention under §1225(b)(1), § 1225(b)(2)(A), or § 1226(a). (Doc. 1, at 7-13; Doc. 3, at 21-23).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov*, 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto*, 2025 WL 2976572, at *5 (collecting cases). The parties dispute whether Navarrete is still "seeking admission" to the United States. (Doc. 1, at 7-13; Doc. 3, at 21-23).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so

the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The

---

[3] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court.

Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community."[4] *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 25, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings.

---

[4] Section 1226(c) provides for the mandatory detention of criminal aliens pending removal proceedings. Navarrete falls under the provisions of § 1226(a), not § 1226(c) because his driving under the influence conviction did not result in personal injury to another, is not a crime of moral turpitude, and did not result a year or more of imprisonment. 8 U.S.C. § 1226(c)(1)(A)-(E).

11

*Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at *7 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Navarrete's detention. Section 1225(b)(1) explicitly applies to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled," and Navarrete was paroled into the United States on November 29, 2022. (Doc. 3-2, at 3). Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez, 792 F. Supp. 3d at 214*, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto*, 2025 WL 2976572, at *5 (collecting cases). Navarrete is not actively attempting to come into the United States; based on the plain meaning of the phrase "seeking admission," Navarrete sought admission when he entered the United States on November 29, 2022. (Doc. 3-2, at 3); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Since his release on parole, Navarrete has resided in the Hazleton, Pennsylvania, obtained work authorization, and applied for asylum. (Doc. 1-5, at 7; Doc. 3-3, at 3). A noncitizen, like Navarrete, who has established themselves in the United States, making connections since their entry, is no longer

at the "threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025).

The Court does not find persuasive the government's contention that Navarrete is effectively still in line at the border because he entered the United States on parole rather than an order of release on recognizance. (Doc. 3, at 4, 21-23). If the Court adopted the government's argument that noncitizens who enter the United States on an order of recognizance are subject to detention under § 1226 and afforded release on bond, while noncitizens who are re-detained after years in the United States on parole are subject to mandatory detention under § 1225(b)(2), it would recreate the incentive for noncitizens to avoid inspection that the IIRIRA was enacted to eliminate. H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. Furthermore, DHS did not follow the procedures for revoking parole, but arrested Navarrete and charged him as "an alien present in the United States who has not been admitted or paroled," in accordance with the provisions of § 1226(a). (Doc. 3-3, at 3; Doc. 3-4); *See A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *5 (D.N.J. Jan 5, 2026) (finding petitioner re-detained after release on humanitarian parole could only be properly detained under § 1226(a) because he was not re-detained under parole revocation procedures); *see also Gomes v. Hyde*, 804 F. Supp. 3d 265, 276-77 (D. Mass. 2025) (finding detention under § 1226(a) was applicable to petitioner who was arrested on a warrant, not because humanitarian parole under § 1182(d)(5)(a) automatically terminated). Section 1226(a) applies to applicants for admission, like Navarrete, who are not actively seeking admission but who have been residing in the United States for an extended period of time. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained

him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"). Accordingly, Navarrete was improperly detained under § 1225(b), when he should have been detained under § 1226(a).

    B.  NAVARRETE'S DUE PROCESS RIGHTS WERE VIOLATED WHEN LOWE IMPROPERLY SUBJECTED HIM TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Navarrete under § 1225(b)(2) violates Navarrete's procedural due process rights. Navarrete avers that Lowe's refusal to consider less restrictive alternatives to mandatory detention constitutes due process violations. (Doc. 1, at 19). Lowe counters that as an immigration detainee, Navarrete has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 3, at 43).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While noncitizens at the threshold of initial entry cannot claim due process rights beyond the procedure authorized by Congress, noncitizens released on parole under 8 U.S.C. § 1182(d)(5), which is granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit, still have a right to habeas relief. *Thuraissigiam*, 591 U.S. 103, 138-39 (2020); *Francois v. Noem*, No: 25-7334, 2026 WL 27565, at *5-*6 (E.D. Pa. Jan. 5, 2026) (finding that when a noncitizen paroled under § 1182(d)(5) is later apprehended, detention is proper under § 1226(a) not § 1225(b)(2)); *Sharapov v. O'Neil*, No: 26-38, 2026 WL 146668, at *3 (E.D. Pa. Jan 26, 2026) (finding mandatory detention without the opportunity

for a bond hearing of a noncitizen paroled under § 1182(d)(5) violated the INA); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900, at *1 (E.D. Pa. Dec. 22, 2025) (finding a noncitizen paroled under § 1182(d)(5) was illegally detained without a bond hearing under § 1225(b)(2)).

To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Navarrete's favor because Lowe has deprived Navarrete of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Navarrete's favor because Navarrete remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to

15

erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Navarrete's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at *8. Here, Navarrete poses no such risk to the government's interest in detaining him. Lowe does not allege that Navarrete poses a flight risk, and Navarrete's single driving under the influence charge does not concern moral turpitude and would not even conditionally bar a finding of good moral character under the INA. (Doc. 3-3, at 4); *see* INA 101(f); U.S. Citizenship and Immigration Services, Conditional Bars for Acts in Statutory Period, https://www.uscis.gov/policy-manual/volume-12-part-f-chapter-5 (last visited February 25, 2026). As each *Mathews* factor weighs in Navarrete's favor, his mandatory detention under § 1225(b) violates his procedural due process rights. Accordingly, Navarrete's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Navarrete from custody.[5]

---

[5] The Court notes that Navarrete also seeks relief in the form of an injunction preventing the government from removing Navarrete from the United States and attorney's fees and costs under the Equal Access to Justice Act. (Doc. 1, at 22). Pursuant to 8 U.S.C. § 1252, the Court does not have authority to enjoin the government from removing a detained noncitizen. Challenges to enjoin the execution of a removal order must be raised in the courts of appeals. *Nken v. Holder*, 556 U.S. 418, 427 (2009); *Tazu v. AG United States*, 975 F.3d 292, 296-97 (3d Cir. 2020); *Khan v. United States Dep't of Homeland Sec.*, No. 25-cv-14246, 2025 U.S. Dist. LEXIS 264924, at *16-*17. The Court also cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount

**V.    CONCLUSION**

For the foregoing reasons, Navarrete's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Navarrete from custody. Lowe is also permanently enjoined from re-detaining Navarrete under § 1225(b). Navarrete may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

/s/ *Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

**Dated: February 26, 2026**

---

claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Navarrete must request attorney's fees in a separate motion with accompanying exhibits.